**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

JOHNNY CENTER                                                                                              PLAINTIFF

v.                                                  No. 5:13CV00383 JLH

TYSON POULTRY, INC.;
MORRIS MAYERS, individually and as
an employee of Tyson Poultry, Inc.; and
DANIEL HOGGARD, individually and
as an employee of Tyson Poultry, Inc.                                                                  DEFENDANTS

**OPINION AND ORDER**

This is an employment discrimination case in which the parties have presented several discovery disputes to the Court via motions. Tyson Poultry, Inc., filed a motion for a protective order following the termination of the deposition of Felita Wilkes, human resource manager at its Pine Bluff processing plant, after plaintiff's counsel asked a series of questions to which Tyson objected as beyond the scope of discovery and instructed Wilkes not to answer. After Tyson filed its motion for a protective order, the plaintiff, Johnny Center, filed a motion to compel, asserting that Tyson had not answered, or had not answered properly, several interrogatories and numerous requests for production of documents. Center also filed a motion to deem his requests for admission admitted, arguing that Tyson had not fairly met the substance of the requests in its responses. The parties have briefed the motions and also have argued orally at a hearing.

Center was hired by Tyson in July 2001. In 2013, he was an assistant plant manager at the Tyson processing plant in Pine Bluff, Arkansas. In the summer of 2013, Center applied for the position of plant manager but was not promoted to that position. Instead, Morris Mayers, who was the Pine Bluff complex manager, hired Louis Vallee, who was the plant manager at Tyson's facility in Sedalia, Missouri. In September 2013, Center was terminated, allegedly for removing product

that was placed on "HACCP Hold"[1] and for theft of property.  Center alleges that both of the employment decisions, the denial of his request to be promoted to plant manager and his termination, were based on his race in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000(e), Title VII as amended.[2]

Federal Rule of Civil Procedure 26(b)(1), as amended in 2000, provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"  And, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  *Id*.  As the Tenth Circuit has explained, this provision contemplates a "two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action."  *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009).  Thus, when a party objects that discovery seeks information that is not relevant to the claims or defenses, the Court must determine whether discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it nevertheless because it is relevant to the subject matter of the action.  *Id*. at 1188-89.  "This good-cause standard is intended to be flexible."  *Id*. at 1189.

In addition, discovery may be limited when the burden or expense of discovery outweighs the likely benefit.  Rule 26(b)(2)(C) provides:

> On motion or on its own, the court must limit the . . . extent of discovery

---

[1] HACCP is an acronym for Hazard Analysis and Critical Control Points, which is a system intended to identify and prevent hazards in food production. http://www.fsis.usda.gov/Oa/background/keyhaccp.htm.

[2] Center also has a defamation claim that arises under state law.  None of the discovery disputes presently before the Court relate to the defamation claim.

> otherwise allowed by these rules . . . if it determines that:
>
> * * *
>
> > (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(iii). Tyson contends that the burden or expense of much of the discovery sought by Center outweighs its likely benefit and therefore should be limited under this provision of Rule 26.

Center has sought in discovery to obtain statistical information relating to the racial composition of the workforce at the Pine Bluff facility where he worked, as well as Tyson's workforce in the state of Arkansas. Tyson objects to most of those discovery requests. Center has cited several cases holding that statistical information regarding the composition of the workforce at the defendants' business may be relevant, even in an individual case, to show disparate treatment and to establish a claim of pretext. *See*, for example, *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1102-05 (8th Cir. 1988); *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 832 (8th Cir. 1977); *Parham v. Southwestern Bell Tel. Co.*, 433 F.2d 421, 426 (8th Cir. 1970). Although these cases predate the 2000 amendments to Rule 26, they concern the definition of relevancy under Fed. R. Evid. 401, and they have not been overruled; which is to say that they seem to indicate that statistical information regarding such matters as the composition of the workforce may be relevant to the plaintiff's claim or the defendant's defense even in an individual discrimination action. Moreover, the Eighth Circuit has recently acknowledged that statistical information may be relevant, even if it is insufficient standing alone, to carry the day for the plaintiff in an individual case. *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 740-41 (8th Cir. 2013).

On the other hand, the Eighth Circuit has said:

> Company-wide statistics are usually not helpful in establishing pretext in an employment-discrimination case, because those who make employment decisions vary across divisions. Absent some more particularized argument from plaintiff as to how such information might have helped in this case, we cannot say that the District Court abused its discretion in limiting the scope of [the plaintiff's] discovery request.

*Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997). Thus, "Courts have also limited the discovery of company records to the local facility where plaintiff was employed, where there is no showing of the need for regional or nationwide discovery." *Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005); *see also Christian v. Frank Bommarito Oldsmobile, Inc.*, No. 4:08CV1423, 2009 WL 1657423, at *1-2 (E.D. Mo. June 10, 2009); *Murphy v. KMart Corp.*, No. CIV 07-5080-KES, 2008 WL 5429643, at *6-8 (D.S.D. Dec. 27, 2008); *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 653-54 (D. Kan. 2004). To be relevant, evidence of discrete acts of discrimination must be acts of discrimination committed by the decisionmakers in the plaintiff's case. *Callanan v. Runyun*, 75 F.3d 1293, 1298 (8th Cir. 1996).

Center has not established good cause for expanding the discovery to include the entire state of Arkansas or Tyson's nationwide operations, so Tyson's objections to discovery into practices at facilities other than the one where Center was employed will be sustained. On the other hand, Tyson's objections to statistical information at the facility where Center was employed will be overruled unless the Court determines, under Rule 26(b)(2)(C)(iii), that the burden or expense of the discovery outweighs its likely benefit.

Request for Production Nos. 3 and 5 seek "all documents that disclose the job performance" of Center at the Pine Bluff plant and of Vallee at the Sedalia plant. During the hearing, however, Center narrowed his request to TEAMS evaluations and "Red/Green reports," which Tyson has agreed to provide for the relevant period of time, so the motion to compel is denied as moot to those

requests. The parties also stated that they had resolved their dispute as to Request for Production Nos. 4 and 7, so the motion to compel is denied as moot with respect to those requests. Tyson inadvertently failed to respond to Request for Production No. 11, but it has now done so, therefore, the motion to compel is denied as moot as to that request. Tyson has produced the document requested in Second Request for Production No. 2, so the motion to compel is denied as moot with respect to this request. Tyson answered Interrogatory No. 5 during the hearing, so the motion to compel is denied as moot with respect to that interrogatory. Tyson's written answer to Interrogatory No. 6 is sufficient, so the motion to compel is denied as to that interrogatory.

Request for Production No. 8 seeks "all personnel policies and work rules of Tyson effective in 2011, 2012, 2013, and on the last date of Center's employment with Tyson." That request is overly broad inasmuch as a company engaged in meat production will have a myriad of personnel policies and work rules. Tyson has produced the conduct policies pursuant to which Center was discharged, as well as other policies that relate to Center's claims and Tyson's defenses. The motion to compel is denied as to Request for Production No. 8.

Request for Production No. 12 seeks a list of all employees of Tyson's by race, date of termination, and position, in the state of Arkansas, who have been terminated for theft since January 1, 2011. Request for Production No. 13 requests a list of all employees who have been accused of theft by Tyson; it is not limited temporarily or geographically. At the hearing, plaintiff's counsel limited the requests to Tyson's Pine Bluff facility. And at the hearing, Tyson's counsel represented to the Court that the software system that would be used to search for this information uses a code for "gross misconduct," which encompasses several offenses, of which theft is one. She stated that Tyson could perform a computer search to find terminations for gross misconduct, but then its employees would have to pull individual employment files to determine which terminations

5

were for theft and which were some other form of gross misconduct. Because Tyson has approximately 1,600 employees at the Pine Bluff facility, and because it experiences approximately a 50% turnover rate annually, Tyson contends that the expense and burden of searching so many files outweighs the likely benefit. That argument seems correct with respect to hourly employees. The Court is not persuaded, however, that the burden or expense of producing that information with respect to salaried employees during the time that Mayers was the complex manager outweighs the likely benefit of that information. Tyson is ordered to produce individual employment files for salaried employees who were terminated for theft while Mayers was the Pine Bluff complex manager. The motion to compel is granted in part and denied in part as to Request for Production No. 12.

Tyson's counsel represented to the Court that Tyson has no record of employees who have been accused of theft other than those who were terminated. Therefore, the motion to compel is denied as moot with respect to Request for Production No. 13.

Center's Second Request for Production No. 3 seeks the resumes of all of the individuals who applied for the position of plant manager for the Pine Bluff processing plant in 2013. That information is relevant to Center's claims and Tyson's defenses. Center's motion to compel is granted as to Second Request for Production No. 3.

Interrogatory No. 3, Request for Production No. 14, and Request for Production No. 15 are interrelated. Interrogatory No. 3 requests the following information regarding promotions by Tyson in the state of Arkansas since January 1, 2011, for every employee who has been promoted:

      a.     the name of the employee;

      b.     the title of the job to which the employee was promoted;

      c.     the race and rate of pay (after promotion) of the employee promoted;

6

> d. the date of hire of the employee promoted;
>
> e. the date of the promotion; and
>
> f. the job(s) held and the rate(s) of pay of the employee before the promotion.

Request for Production No. 14 seeks a list of all performance standards and job prerequisites used in connection with each job or position referred to in answer to Interrogatory No. 3.

Interrogatory No. 3 is overly broad and unduly burdensome, even if limited to Tyson's processing plant in Pine Bluff. Decisions regarding promotions of hourly employees were made by an assistant plant manager, not by Mayers. The burden and expense of producing that information as to hourly employees outweighs the likely benefit of that evidence. However, the burden and expense of producing that information for employees promoted by Mayers during his tenure as the Pine Bluff complex manager does not outweigh the likely benefit of that information, so the Court orders Tyson to produce that information. The motion to compel is therefore granted in part and denied in part as to Interrogatory No. 3.

Plaintiff's Request for Production No. 14 is dependent on Interrogatory No. 3, and since the Court has granted in part and denied in part the motion to compel as to Interrogatory No. 3, the motion to compel as to Request for Production No. 14 is granted to the same extent and denied to the same extent as Interrogatory No. 3.

Request for Production No. 15 requests a job or position description for each job or position at Tyson's Pine Bluff complex. Tyson objects that the request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Tyson has provided the job description for the plant manager position for which Center applied and for which Vallee was hired. The job descriptions for the remaining positions are not relevant to this action, and the discovery request is not reasonably calculated to lead to the discovery of admissible evidence. The

motion to compel is denied as to Request for Production No. 15.

Interrogatory No. 7 requests Tyson to list each job or position that was never held by a black individual at Tyson in the state of Arkansas. At the hearing, Center agreed to limit the interrogatory to the Pine Bluff complex. Tyson contends that the interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Tyson also contends that it does not have the records to provide the necessary information, but states that it could provide the history of Mayers' hiring and firing decisions, by race, during his tenure as the Pine Bluff complex manager. Center argues that Felita Wilkes, who has been employed at the Tyson Pine Bluff facility since it opened or almost since it opened, would have a sufficient memory to provide the information. The Court orders Tyson to answer Interrogatory No. 7 by providing a history of Mayers' hiring and firing decisions during his tenure as the Pine Bluff complex manager, including the race of each person he hired or fired. In addition, Center will be allowed to question Wilkes during her deposition regarding her memory as to what positions, if any, at the Pine Bluff facility have never been filled by a black person.

With respect to the requests for admission, the provision of the rule that governs most of the issues is the following sentence: "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). Tyson's responses to Requests for Admission Nos. 1 through 26 meet the standard, so the motion to compel is denied with respect to those requests. Center argues that Tyson has not fairly met the substance of the requests, but that argument is rejected.

Tyson's objections to Requests for Admission Nos. 28 through 31 are not well taken. As Tyson says in its brief, it is apparent that those requests for admission were lifted verbatim from the

complaint, which I believe means that the substance of those requests does not go to Center's belief, but rather to the facts that the complaint intends to assert as true. For example, in Request for Admission No. 28, Center is asking Tyson to admit that "Louis Vallee had a history of poor management practices as plant manager at Sedalia, Missouri." Tyson must admit or deny Request for Admission No. 28, so construed. And so forth for 29, 30, and 31.

The remaining requests for admission are all governed by the comments above regarding the scope of discovery. In short, although Center did not work in the maintenance department or as a production employee, those requests for admission are within the scope of discovery inasmuch as plant-wide practices may shed light on whether the actions taken *vis-a-vis* Center were motivated by racial bias and whether the proffered reasons for those actions are pretextual. Tyson is ordered to respond to those requests for admission.

For the reasons stated, Center's motion to compel is granted in part and denied in part (Document #39); Center's motion to deem admitted is denied (Document #41); and Tyson's motion for protective order as to the deposition of Felita Wilkes is denied (Document #37). Center has also requested sanctions against Tyson. Inasmuch as many of Tyson's objections have been sustained, that request is denied.

IT IS SO ORDERED this 9th day of September, 2014.

*J. Leon Holmes*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE